NUMBER 13-08-00225-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JAYSON (JASON) MARTINEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 107th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza



 On April 7, 2008, appellant, Jayson (Jason) Martinez, was convicted of: (1)
intentionally or knowingly causing serious injury to a child, a first degree felony; (2)
recklessly causing injury to a child, a state jail felony; and (3) aggravated assault with a
deadly weapon, a second degree felony. See Tex. Penal Code Ann. § 22.02(a)(1), (b)
(Vernon Supp. 2008), § 22.04(a)(1), (3), (e), (f) (Vernon Supp. 2008). Martinez was
sentenced to ten years' imprisonment for the first degree felony, one year's imprisonment
for the state jail felony, and ten years' imprisonment for the second degree felony, with the
sentences to run concurrently. See id. §§ 12.32-.35 (Vernon Supp. 2008) (setting forth
felony sentencing ranges). On appeal, Martinez contends by four issues that: (1) the
evidence was legally insufficient to support his conviction for recklessly causing injury to
a child; (2) the evidence was factually insufficient to support his conviction for aggravated
assault with a deadly weapon; (3) the trial court erred by severing his case from that of four
co-defendants; and (4) the trial court erred by disallowing certain testimony by Martinez. 
We affirm.

I. Background

 Martinez, along with co-defendants Mayra Alejandra Luna, Omar Maldonado,
Joshua John Frost, and Francisco De Leon III, were indicted by a Cameron County grand
jury on August 22, 2007. (1) The allegations contained in the indictment arose from an
incident that occurred on June 7, 2007. On October 29, 2007, the trial court granted the
State's motion to sever Martinez's case from that of the other co-defendants. The guilt
phase of Martinez's trial commenced on March 18, 2008.

 The evidence was undisputed that on June 7, 2007, a white pickup truck
approached a blue Chevrolet Monte Carlo at the corner of F Street and Buchanan Street
in Harlingen, Texas. Norma Martinez ("Norma") was driving the Monte Carlo, and Jesse
Garcia was seated in the front passenger seat. Riding as passengers in the rear seat were
Norma's daughter Maria Martinez Cortez ("Maria"), Maria's ten-month-old daughter A.T.,
Maria's two-year-old daughter A.O., and Maria's future husband Ezzie Cortez. The white
pickup truck contained Martinez, Luna, Maldonado, Frost, De Leon, and Tuwana Clay.

 As the truck pulled up alongside the car, an altercation arose between Clay and one
of the occupants of the Monte Carlo. Maria testified at trial that Clay shouted "'[g]et off [sic]
the car, bitch,'" and "'[s]top the car. Get off [sic] the car.'" The truck passed the car, made
a U-turn, and then approached the Monte Carlo from behind. At that point, according to
Maria, "[w]e saw the gentleman in the back [of the truck] start throwing bricks at my car.
. . . We just saw a lot of guys get out from the back of the pickup truck and start throwing
bricks from the truck." Maria stated that she recognized Martinez and De Leon as among
the people riding in the truck. Maria stated that Garcia, who was in the front passenger
seat of the Monte Carlo, then got out of the car and "started yelling that the babies were
in the car," at which point he was struck on his hand by a brick. Maria testified that
Martinez then "[r]an up to my car" and "[w]ith his hand, he started breaking my side
window." Next, according to Maria, Martinez "look[ed] inside my car" and "picked up a brick
and went to the back of my car and threw it in." Maria stated that the brick "glazed [sic] me
on my . . . right side. . . . I got down and it hit my daughter [A.T.] in the back of the head." 
Maria further stated that a second brick was thrown into the car through the back window
that struck Cortez on his back and A.O. on her foot. She stated that the only people
behind the car at the time were Martinez and De Leon. Maria testified that A.T. suffered
a fractured skull and was taken to Valley Baptist Medical Center where she underwent
surgery to repair her head injuries.

 Both Cortez and Norma corroborated Maria's testimony. Cortez noted that the
passengers of the truck "[s]tarted throwing, I guess, pieces of concrete" at the Monte Carlo
and that Martinez then approached the car and "[s]tarted hitting the side window." Cortez
then observed Martinez throw a brick through the back window, and noted that it struck
A.T. Cortez stated that a second rock came through the back window but that it did not hit
anyone.

 Norma, Maria's mother, testified that Luna was driving the truck and that she heard
Clay yell at someone in the Monte Carlo. Norma stated that Martinez approached the car,
started hitting the passenger side window with his hand, and then "threw a rock" through
the rear window. When asked if anyone was hit by the first rock thrown by Martinez,
Norma responded: "My daughter [Maria] got a little bit like scratched, but it went straight
to [A.T.]'s head." Norma also noted that she observed De Leon throw the second brick
which struck Cortez in the back.

 Testifying on his own behalf, Martinez stated that he did not know that there were
children in the Monte Carlo. Martinez admitted that he "tried to throw" a "big rock" at the
car but stated that "it was so heavy that it just landed in the front of the truck." Martinez
placed the blame for the children's injuries on his companions in the truck--specifically
Tuwana Clay--as evidenced by the following exchange on direct examination:

Q. These rocks that were thrown that we have here in evidence, two of
which were inside their--the vehicle that these little kids were in, was
it the intention of--to your knowledge, of the people that you were
with to throw rocks at these little kids?


A. My knowledge, I'm pretty sure they were reckless. They were just
careless, and they were probably trying to hurt Maria, the girls. That's
what I--that's my speculations [sic]. I mean, nobody else had
problems with nobody in that vehicle, just--I just wanted to talk to
Jesse when I saw him. I didn't know he was in the vehicle until he got
out. So if anybody--


Q. Tuwana had problems with Maria, right?


A. Yes, sir.


 The jury found Martinez guilty of intentionally or knowingly causing serious injury to
A.T., recklessly causing injury to A.O., and aggravated assault with a deadly weapon as
to Maria. (2) See id. §§ 22.02(a)(2), 22.04(a)(1), (a)(3). The jury then imposed sentences of
ten, one, and ten years' imprisonment, respectively, and the trial court ordered the
sentences to run concurrently. This appeal followed.

II. Discussion

A. Legal Sufficiency--Reckless Injury to a Child

 By his first issue, Martinez contends that the evidence adduced at trial was legally
insufficient to support his conviction for recklessly causing injury to A.O. In conducting a
legal sufficiency review, we consider the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt. Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim.
App. 2003). We must give deference to "the responsibility of the trier of fact to fairly
resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts." Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). We are not required to
determine whether we believe that the evidence at trial established guilt beyond a
reasonable doubt; rather, when faced with conflicting evidence, we must presume that the
trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that
resolution. State v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

 Legal sufficiency is measured by the elements of the offense as defined by a
hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd). Under
a hypothetically correct jury charge, Martinez committed the offense of recklessly causing
injury to a child if he (1) recklessly (2) caused bodily injury (3) to a child 14 years of age or
younger. See Tex. Penal Code Ann. § 22.04(a)(3), (c)(1). "Bodily injury" means "physical
pain, illness, or any impairment of physical condition." Id. § 1.07(a)(8) (Vernon Supp.
2008).

 Martinez's sole argument in his first issue is that the evidence was legally insufficient
to establish that A.O. suffered any "bodily injury." (3) In support of this argument, Martinez
points to Cortez's testimony that the second rock thrown into the Monte Carlo did not hit
anyone. However, Maria testified that the second rock "hit [A.O.'s] foot" and that, as a
result, A.O. "had a couple of scratches." The State also notes that A.T.'s hospital records,
which were received into evidence without objection by defense counsel, contained a
statement by A.T.'s treating physician that "the other sister [A.O.] was injured" by some of
the pieces of rock. See Tex. R. Evid. 902(10)(a) (providing for the self-authentication of
business records accompanied by an affidavit). The jury may have inferred from these
pieces of evidence that A.O. suffered physical pain, and therefore, bodily injury. See
Goodin v. State, 750 S.W.2d 857, 859 (Tex. App.-Corpus Christi 1988, pet. ref'd) ("The
fact of a physical intrusion on the body in the form of a cut or scrape can itself be sufficient
evidence of the associated physical pain necessary to show 'bodily injury.'") (citing Bolton
v. State, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981)).

 Although Maria's testimony and the medical records conflict with Cortez's statement
that the second rock thrown into the car did not hit anyone, we must defer to the jury's
resolution of the conflict in favor of the prosecution. See Turro, 867 S.W.2d at 47. Viewing
the evidence in the light most favorable to the verdict, we conclude that a rational jury could
have found beyond a reasonable doubt that A.O. suffered a "bodily injury." Sanders, 119
S.W.3d at 820. Martinez's first issue is overruled.

B. Factual Sufficiency--Aggravated Assault

 By his second issue, Martinez argues that the evidence adduced at trial was
factually insufficient to support his conviction for the aggravated assault of Maria. In
conducting a factual sufficiency review, we consider the evidence in a neutral light. 
Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The verdict is to be set
aside only if: (1) it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and manifestly unjust; or (2) it is against the great weight and preponderance
of the evidence. Id. at 415 (citing Johnson v. State, 23 S.W.3d 1, 10 (Tex. Crim. App.
2000)). To reverse a verdict for factually insufficient evidence, we must "explain in exactly
what way the State's evidence, while legally sufficient, is nevertheless too weak to
withstand scrutiny, or in exactly what way we perceive the conflicting evidence greatly to
preponderate against conviction." Id. at 414.

 Factual sufficiency, like legal sufficiency, is measured by the elements of the offense
as defined by a hypothetically correct jury charge. Malik, 953 S.W.2d at 240; Adi, 94
S.W.3d at 131. Under a hypothetically correct jury charge, Martinez committed the offense
of aggravated assault with a deadly weapon if he (1) intentionally, knowingly, or recklessly,
(2) caused bodily injury to another, and (3) used or exhibited a deadly weapon during the
commission of the assault. See Tex. Penal Code Ann. § 22.01(a)(1), § 22.02(a)(2).

 Martinez specifically contends by his second issue that the evidence was factually
insufficient because "the State did not delve into what the meaning of graze and scrape
mean in relation to bodily injury." (4) Martinez refers here to Maria's testimony that a rock
thrown by Martinez "glazed [sic] me on my . . . right side" and her later statement that the
rock "just barely--it barely scraped me. I just had like a little bruise." Martinez does not
point to any conflicting evidence which would indicate that Maria did not suffer bodily injury. 
Rather, he argues that the words "graze" and "scrape" are ambiguous and that "[i]t was
incumbent on the [S]tate to clarify [Maria's] words and hone in on the elements in the
charge." We disagree that Maria's words required any clarification. The Texas Court of
Criminal Appeals has noted that the statutory definition of bodily injury "appears to be
purposefully broad and seems to encompass even relatively minor physical contacts so
long as they constitute more than mere offensive touching." Lane v. State, 763 S.W.2d
785, 786 (Tex. Crim. App. 1989). Here, Maria testified that she was "glazed [sic]" or
"scraped" by the projectile thrown by Martinez, and Norma testified that Maria was "a little
bit like scratched" by the rock. Viewing the evidence in a neutral light, this testimony is
probative of the physical contact necessary to show "bodily injury." See Goodin, 750
S.W.2d at 859 (citing Bolton, 619 S.W.2d at 167).

 Without any conflicting evidence, we cannot say that the jury's verdict on this count
was clearly wrong, manifestly unjust, or against the great weight and preponderance of the
evidence. See Watson, 204 S.W.3d at 415. Accordingly, we conclude that the evidence
was factually sufficient to support Martinez's conviction of aggravated assault as to Maria. 
Martinez's second issue is overruled.

C. Propriety of Severance

 By his third issue, Martinez contends that the trial court erred by granting the State's
motion to sever because the State "does not have standing to ask for a severance to
protect the rights of co-defendants."

 Article 36.09 of the Texas Code of Criminal Procedure provides in relevant part that
"[t]wo or more defendants who are jointly or separately indicted or complained against for
the same offense or any offense growing out of the same transaction may be, in the
discretion of the court, tried jointly or separately as to one or more defendants." Tex. Code
Crim. Proc. Ann. art. 36.09 (Vernon 2007). However, the court must order a severance
"in cases in which, upon timely motion to sever, and evidence introduced thereon, it is
made known to the court that there is a previous admissible conviction against one
defendant or that a joint trial would be prejudicial to any defendant." Id.

 Here, the State filed a motion to sever Martinez's case from those of his co-defendants on October 23, 2007. The motion noted that: (1) Martinez's record showed
that he had a prior felony conviction; (2) Maldonado and De Leon did not have prior felony
convictions; (3) a joint trial would therefore be "prejudicial" to Maldonado and De Leon; and
(4) Martinez's counsel informed the court that he did not oppose the severance.

 Martinez does not dispute any of the facts alleged in the State's motion to sever. 
Instead, he baldly asserts that "granting [a motion to sever] when the State asks for it, and
not the defendant, is an abuse of discretion because the law requires that it only be
asserted by a defendant." However, Martinez does not provide any authority, and we can
find none, supporting this position. Indeed, the plain language of article 36.09 states that
it is generally within the discretion of the trial court to grant or deny a motion to sever. See
id. According to the statute, the only situation where the court loses that discretion is when
a defendant timely files a motion to sever, introduces evidence thereon, and the trial court
finds that there is a previous admissible conviction against one defendant or that a joint
trial would be prejudicial to any defendant--in such cases the court must grant the motion
to sever. See id. There is no provision in the statute, though, forbidding the trial court from
granting a motion to sever simply because the motion was originally filed by the State.

 We therefore conclude that the trial court did not err by granting the State's motion
to sever. Accordingly, Martinez's third issue is overruled. (5)

D. Disallowance of Testimony

 By his fourth issue, Martinez asserts that the trial court erred by disallowing certain
testimony. Prior to Martinez's direct examination at trial, his trial counsel asked the trial
court for permission to inquire into "the reason for the bad blood between [Martinez] and
[Garcia]." The following exchange took place:

THE COURT: All right. Bring in the jury.

[State's attorney]: Your Honor, before they do that, I want to go
ahead and just remind defense counsel
concerning our motion in limine about
referencing or talking about any prior bad acts or
any other extraneous offenses.


THE COURT: Of the defendant?


[State's attorney]: Of the defendant and his interaction with either
relatives of some of the victims here or with the
victims themselves.


THE COURT: Okay. What do you mean interaction? That's
something else.


[State's attorney]: Well, there are other--the bad, the other stuff,
the interaction consider--or is about prior bad
acts. Apparently, there's been other arguments,
fighting. . . .


[Martinez's attorney]: I have no intention of bringing up anything bad
about my own client, Judge. The only thing I'm
going to bring out the fact is that why he was
after this guy Jesse Garcia. And that was
because Jesse Garcia was involved in a
stabbing of a close personal friend of his, like a
brother, a couple of days earlier; and he wanted
to ask him about whether or not that was. . . .


THE COURT: Okay. That had something to do with this
incident?


[Martinez's attorney]: Yes. Well, no. The stabbing didn't. It happened
a couple of days before. A shooting.


THE COURT: Okay.


[Martinez's attorney]: But that was the reason for Jayson Martinez to
approach this guy Jesse Garcia.


[State's attorney]: Once again, Your Honor, he's talking about prior
bad acts.


[Martinez's attorney]: Well, not bad act of my client. . . .


THE COURT: Okay. Well, I'll sustain the [S]tate's objection to
bringing that out. You can go ahead and elicit
testimony about chasing . . . Jesse Garcia and
confronting him just to ask him about something,
but don't go into the specifics of what that is.


[Martinez's attorney]: All right. Just so that I'm clear, do I say
that--can Jayson Martinez ask him about the
shooting of the friend?


THE COURT: No. I'll sustain that part of the objection.


 Martinez alleges that, by sustaining the State's objection, the trial court deprived him
of his constitutional due process right to present a defense. See U.S. Const. amend. XIV;
Tex. Const. art. I, § 10. Martinez explains on appeal that "[t]his defense took the form of
explaining that both [Martinez] and Jesse [Garcia] were no where [sic] near the vehicles
when the rocks were thrown which caused the harm."

 Generally, we review a trial court's decision to admit or exclude evidence under an
abuse of discretion standard. See McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim.
App. 2008). However, we need not do so here because Martinez failed to preserve the
issue for our review. Texas Rule of Evidence 103(a)(2) provides that an error may not be
predicated upon a ruling which excludes evidence unless: (1) a substantial right of a party
is affected; and (2) the substance of the evidence was made known to the court by offer
of proof or was apparent from the context within which questions were asked. Tex. R.
Evid. 103(a)(2); Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). Here, although
Martinez's counsel explained to the trial court that Martinez could testify as to an alleged
prior stabbing or shooting by Garcia, there was no offer of proof made as to Martinez's
testimony regarding his or Garcia's positions during the incident in question. Because the
substance of the evidence sought to be admitted was not made known to the trial court,
and was not apparent from the context, Martinez has failed to preserve the issue for
appellate review. See Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1(a). His fourth issue is
overruled.

III. Conclusion

 We affirm the judgment of the trial court.

 

 

 _______________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 25th day of June, 2009.
1. The indictment alleged six counts against all five defendants: (1) intentionally or knowingly causing
serious bodily injury to A.T., a child, see Tex. Penal Code Ann. § 22.04(a)(1) (Vernon Supp. 2008); (2)
intentionally or knowingly causing bodily injury to A.O., a child, see id. § 22.04(a)(3); (3) aggravated assault
with a deadly weapon as to Maria Martinez Cortez, see id. § 22.02(a)(2) (Vernon Supp. 2008); (4) aggravated
assault with a deadly weapon as to Jesse Garcia, see id.; (5) endangering a child by "throwing stones, bricks,
or pieces of concrete at or through the window of the automobile occupied by [A.T.] and [A.O.]," see id. §
22.041(c) (Vernon Supp. 2008); and (6) endangering a child by "initiating or participating in gang-related
criminal actions or violence . . . that either directly through violence itself, or through retaliation for previous
criminal acts, brought injury to [A.T.], [A.O.], or Jesse Garcia," see id.
2. Before the jury rendered its verdicts on Counts I, II and III of the indictment, the trial court granted
Martinez's motion for directed verdict on Counts IV (aggravated assault with a deadly weapon as to Garcia)
and V (endangering a child by "throwing stones, bricks, or pieces of concrete at or through the window of the
automobile occupied by [A.T.] and [A.O.]"). Further, because the State abandoned Count VI of the indictment
(endangering a child by "initiating or participating in gang-related criminal actions"), the trial court dismissed
that count.
3. By his first issue on appeal, Martinez does not dispute the sufficiency of the evidence as to his state
of mind or as to A.O.'s age.
4. By his second issue on appeal, Martinez does not dispute the sufficiency of the evidence as to his
state of mind or as to whether he used or exhibited a deadly weapon.
5. In the portion of his appellate brief addressing his third issue, Martinez alludes to a "problem"
involving the order of trial, suggesting that "the [S]tate determined the order of trial" in the instant case. See
Tex. Code Crim. Proc. Ann. art. 36.10 (Vernon 2007) ("If a severance is granted, the defendants may agree
upon the order in which they are to be tried, but if they fail to agree, the court shall direct the order of the
trial."). Martinez does not argue that he and the other defendants agreed upon the order of trial; instead,
Martinez suggests that he "was harmed per se because he was not allowed to set up his story against his
alleged fellow assailants, whom the [S]tate appeared to exonerate at trial." The State argues that Martinez
failed to preserve this issue because Martinez's trial counsel made no objection when the trial court
announced Martinez's case first. See Tex. R. App. P. 33.1(a). Even if the issue were properly preserved, we
note that Martinez has directed us to no authority indicating that a trial court commits reversible error by setting
the order of trial in the absence of any agreement among the defendants. The issue is therefore waived. See
Tex. R. App. P. 38.1(i).